**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **JAMICHAEL PHILLIPS,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **V.** | § | |
| | § | |
| **CITY OF CENTER, TEXAS,** | § | **CIVIL ACTION NO. 9:15-CV-54** |
| **and** | § | |
| **JIM ALBERS,** | § | |
| **City of Center Chief of Police,** | § | **JUDGE SCHNEIDER** |
| **and** | § | |
| **STEPHEN STROUD,** | § | |
| **City of Center Police Officer,** | § | **JURY DEMANDED** |
| **and** | § | |
| **CHRIS KNOWLTON,** | § | |
| **City of Center Police Officer,** | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER ON**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this civil rights lawsuit under 42 U.S.C. § 1983, Plaintiff Jamichael Phillips asserts that

Defendants arrested him without probable cause on two separate occasions, thereby violating his

Fourth Amendment right to be free from unlawful arrest.  Now before the Court is Defendants'

Motion for Summary Judgment ("Motion") (Doc. No. 36).  After fully considering the Parties'

respective arguments, the undisputed facts, and the applicable law, the Court **GRANTS IN**

**PART** and **DENIES IN PART** Defendants' Motion.

**I.       FACTUAL BACKGROUND**

Plaintiff bases this lawsuit on the events surrounding two separate arrests.  The first arrest

took place in 2013 and arose from an investigation of a theft from a Wal-Mart store in Center,

Texas.  The second arrest happened in 2014 and involved a search, made in connection with a

warrant, of the residence located at 902 Greer Street, Center, Texas.

## A. 2013 Wal-Mart Arrest (the "2013 Wal-Mart Arrest")

In March 2013, Plaintiff was suspected of playing a role in a theft that occurred at a Wal-Mart store in Center, Texas. Wal-Mart's video surveillance footage shows three men entering the store at 11:24 PM on March 4, 2013. The footage displays one of the three men (who is later identified as Plaintiff) leaving the store at 11:37 PM. A Wal-Mart employee then recalls being approached by the other suspects and asked where they could find a tub or container at approximately 11:55 PM. After directing these men to the store's housewares aisle, this same employee heard the sound of glass breaking near the store's electronics department. Upon investigating, the employee saw one suspect holding several iPads while another was loading iPads into a container. The employee screamed for help, and the two men ran towards the store's rear fire exit.[1]

In the meantime, an employee, who was working outside on the store's loading dock, remembers seeing a dark-colored "sporty-looking" car parked by the fire exit, where the other suspects had escaped. This employee believed that the "driver had his foot on the brake," indicating that the vehicle had its engine running. The employee, however, could not confirm that this "sporty-looking" car was the getaway car as he did not remember seeing anyone run out and was unsure of the vehicle's color or model.

Jacob Gross, a Center Police Officer, responded to and investigated the reported theft.[2] Based on his eye witness interviews, Wal-Mart's surveillance video footage, and photograph printouts from the surveillance video footage, Officer Gross noted that the theft involved three suspects: (1) one who broke the display case storing the iPads, (2) one who helped carry the

---

[1] This employee believes that she was approached by four men. She claims that the other two ran towards the grocery area when she screamed for help. The record, however, does not further mention the other two men, and they do not play a role in this case.

[2] Officer Gross is not a Defendant in this case.

container filled with the stolen iPads, and (3) one who served as the driver of the getaway vehicle. Officer Gross further believed that the getaway vehicle was a black Pontiac G6. Officer Gross then forwarded the case for further investigation within the department.

At that time, Defendant Stephen Stroud ("Defendant Stroud"), another Center Police Officer, began his investigation of the theft. After reviewing the surveillance video footage, Defendant Stroud identified the getaway vehicle as a dark-colored Pontiac. Photographs of the getaway vehicle and the suspects were then published in the local paper. After the photographs were published, Defendant Stroud received information from a confidential informant ("CI") that the driver was Plaintiff. The same CI also identified Tristan Patton as the individual who helped carry the container filled with the stolen iPads.[3]

A few days after receiving this information, Defendant Stroud met with Plaintiff at his home to discuss the theft. Although Plaintiff denied having any knowledge of the theft, Defendant Stroud noticed that he "appeared to be very nervous." Defendant Stroud further noted that a dark green Pontiac Bonneville was parked in Plaintiff's garage. When Defendant Stroud asked who owned this dark green Pontiac Bonneville, Plaintiff responded that the vehicle belonged to him.

Shortly after his meeting with Plaintiff, Defendant Stroud received additional CI information that Plaintiff was the driver of the getaway vehicle. Defendant Stroud also received a Crime Stoppers tip that identified Plaintiff as the same suspect. Defendant Stroud and Lieutenant Jeremy Bittick then reviewed Wal-Mart's surveillance video footage again, and both identified Plaintiff as the suspected driver.

Defendant Stroud then prepared a warrant application providing a summary of the theft and stating as follows:

---

[3] As discussed later, Tristan Patton is also the owner of the residence at issue in Plaintiff's second arrest.

> The entire theft was caught on video throughout the store showing the suspects entering to leaving the store. [Defendant Stroud] identified one suspect as [Plaintiff] and asked three other officers who they thought the suspect was. [Defendant Stroud] and Lt. Bittick two CI's (sic) all identified the suspect who was wearing the bule (sic) shirt with a white writing with the light colored sleeves and dark pants in the video as the [Plaintiff].

Based on this information, Justice of the Peace Maxie Eaves issued an arrest warrant for Plaintiff. Although Plaintiff was arrested, the District Attorney ultimately decided not to prosecute the case, and the charges against Plaintiff were dismissed due to insufficient evidence.

### B. 2014 902 Greer Street Arrest (the "2014 Greer Street Arrest")

The events surrounding Plaintiff's second arrest began in June 2014 when Defendant Officer Chris Knowlton ("Defendant Knowlton") received a phone call from a CI. The CI advised Defendant Knowlton that Tristan Patton, who was previously identified as a suspect in the 2013 Wal-Mart theft, was in possession of marijuana and had been trafficking this substance for some time. The CI further explained that he could purchase marijuana from Tristan Patton, who was currently living at 902 Greer Street, Center, Texas 75835 (the "Greer Street Residence"). Afterwards, under Defendant Knowlton's direction and supervision, the CI purchased marijuana from Tristan Patton at the Greer Street Residence.

Defendant Knowlton detailed these facts in his affidavit, which produced a search and arrest warrant of the Greer Street Residence. It is uncontroverted that, at the time that Defendant Knowlton sought this search and arrest warrant, Plaintiff was not suspected of having any relation to the Greer Street Residence. Rather, the search and arrest warrant affidavit described the residence and identified only "Tristan Derae Patton" and "others whose names are unknown to th[e] affiant" as the suspected parties in charge of and in control of the suspected place. The warrant authorized the search for drugs at the Greer Street Residence, other buildings, and

vehicles on the premises and within the curtilage as well as the arrest of "each suspected party described and accused" in the affidavit.

On June 25, 2014, Center police officers executed the search and arrest warrant of the Greer Street Residence. Defendant Knowlton served as the officer in charge of the scene. Plaintiff and Defendant Knowlton provide differing accounts of the events that transpired during the execution of this search and arrest warrant.

Plaintiff testified that while he was driving his mother home from an appointment, he observed police officers conducting a drug raid of a house on Brooks Street – a house near the Greer Street Residence. After dropping off his mother, Plaintiff returned to the scene and stood with a number of spectators near the Greer Street Residence. Then, according to Plaintiff, after completing the drug raid on Brooks Street, Defendant Knowlton directed the officers to (1) proceed to the Greer Street Residence, (2) position their vehicles to prevent spectators from leaving the vicinity, and (3) demand that many of the spectators "move" into the yard of the Greer Street Residence. Plaintiff claimed that he was then directed by the officers to sit on the porch of the house while the police completed its search.

Defendant Knowlton, on the other hand, claims that Plaintiff was sitting in the front porch when the police arrived at the Greer Street Residence. Defendant Stroud, who assisted with the 2014 Greer Street Arrest, observed Plaintiff leaving the yard along with a group of other people. The police incident report states that Plaintiff and several others were on the front steps of the Greer Street Residence while Tristan Patton, his mother, and his girlfriend were in the backyard next to his vehicle. The only individuals found inside the residence were three children. All these individuals were detained pending the search.

During the search, the police found drugs in a bedroom, in the tree line at the back of the property, and in a nearby church located behind the property. No drugs or drug paraphernalia were found on Plaintiff at any point during the search. None of the individuals at the scene claimed ownership of these drugs. The police report, however, identifies Trentin Patton (Tristan Patton's brother) as the occupier of the bedroom where drugs were found. Additionally, Tristan Patton admitted that the Greer Street Residence was his residence and that the tree line (where drugs were also found) was a part of his residence.

After completing its search of the Greer Street Residence, the police arrested Plaintiff and several others. The police did not arrest Tristan Patton's mother, his girlfriend, or any of the children.

Plaintiff was charged with felony charges of delivery of controlled substances and child endangerment. He remained in jail for 21 days. The charges against Plaintiff were ultimately dismissed when a CI notified Defendant Knowlton that Plaintiff had not arrived at the premises until immediately before the police.

## II.     ISSUES ADDRESSED IN THIS MEMORANDUM OPINION

The instant Memorandum Opinion addresses Defendants' Motion for Summary Judgment (Doc. No. 36). In particular, this Memorandum Opinion discusses whether summary judgment is appropriate on Plaintiff's § 1983 claims against (1) Defendant Police Officer Stroud, in his individual capacity, with respect to the 2013 Wal-Mart Arrest, (2) the City of Center, Texas ("City of Center) with respect to the 2013 Wal-Mart Arrest and 2014 Greer Street Arrest, (3) Defendant Chief of Police Jim Albers ("Defendant Albers"), in his individual capacity, with respect to the 2013 Wal-Mart Arrest and 2014 Greer Street Arrest, and (4) Defendant Police Officer Knowlton, in his individual capacity, with respect to his 2014 Greer Street Arrest.

Although Plaintiff initially lodged § 1983 claims against Defendants Stroud, Knowlton, and Albers in their individual **and** official capacities, he has withdrawn and abandoned his official capacity claims. Pl.'s Resp. to Defs.' MSJ at pg. 4 n.1 (Doc No. 37). As a result, this Memorandum Opinion only considers individual liability with respect to Defendants Stroud, Knowlton, and Albers.

The Court first analyzes Plaintiff's claims related to the 2013 Wal-Mart Arrest and then proceeds to his claims related to the 2014 Greer Street Arrest.

## III.   LEGAL STANDARD

The Court should grant a motion for summary judgment if no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008). A fact is material if it might affect the outcome of the suit under the governing law. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon*, 560 F.3d at 326. When ruling on a motion for summary judgment, the Court must view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Sossamon*, 560 F.3d at 326.

Under Rule 56, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010) (internal quotation omitted). If the moving party fails to meet this initial burden, the motion

must be denied regardless of the nonmovant's response. *Id.* (internal quotation omitted). If the movant meets the burden, however, Rule 56 requires the opposing party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Anderson*, 477 U.S. at 250; *U.S. ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008); *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, and metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita*, 475 U.S. at 585; *U.S. ex rel. Farmer*, 523 F.3d at 337; *Duffie*, 600 F.3d at 371.

## IV.   DISCUSSION

### A.  Section 1983 Claims and Qualified Immunity

Section 1983 provides redress for those who have been injured or deprived of their rights under color of state law. 42 U.S.C. § 1983. To state a valid claim under § 1983, Plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law. *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Government officials performing discretionary functions are generally shielded from liability for civil damages under 42 U.S.C. § 1983 "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  *See also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *al-Kidd*, 131 S. Ct. at 2085)

("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.")  Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 131 S. Ct. at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (alterations original)).  The law is clearly established if a plaintiff is "able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson,* 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation omitted); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question **beyond debate**." *al–Kidd,* 131 S. Ct. at 2083 (emphasis added).  This standard ensures the officer has "fair and clear warning" of what the Constitution requires. *Id.* at 2086–87 (internal quotation omitted).

When assessing Plaintiff's claims, this Court must view the facts in a light most favorable to the party asserting the injury.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If no clearly established constitutional right has been violated, the inquiry ends there. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004).  But, if a constitutional violation has occurred, this Court must next determine whether the conduct was objectively unreasonable. *Id.* Objective reasonableness must be evaluated at the time of the conduct in question. *See Richards v.*

*Wisconsin*, 520 U.S. 385, 395 (1997). "If resolution of [qualified immunity] in the summary judgment proceedings turns on what the defendant actually did, rather than on whether the defendant is immunized from liability . . . , and if there are conflicting versions of his conduct, one of which would establish and the other defeat liability, then the case is inappropriate for summary judgment." *Haverda v. Hays Cnty.,* 723 F. 3d 586, 599 (5th Cir. 2013) (internal quotation omitted).

### B.  Unlawful Arrest

A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004); *Glenn v. City of Tyler,* 242 F. 3d 307, 313 (5th Cir. 2001); *Trejo v. Perez*, 693 F.2d 482, 488 n.10 (5th Cir. 1982). Probable cause exists only if, at the time of the arrest, the facts and circumstances within the defendant's knowledge and facts of which they had reasonable trustworthy information would cause a prudent person to believe that the plaintiff had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 n.7 (1964).

#### 1.  Plaintiff's Claims Related to the 2013 Wal-Mart Arrest

##### a)  *Defendant Police Officer Stroud's Liability Based on the 2013 Wal-Mart Arrest*

Plaintiff argues that Defendant Stroud is liable under § 1983 because the warrant associated with his 2013 Wal-Mart Arrest was facially deficient. Defendant Stroud maintains that he is shielded from liability because (1) the Shelby County Sheriff's Department arrested Plaintiff, not Defendant Stroud, and (2) a neutral magistrate determined that probable cause existed and signed the warrant, thereby breaking any causation.

As an initial matter, the fact that Defendant Stroud did not himself effectuate Plaintiff's arrest is of no consequence. "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or **participated** in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist,* 699 F. 2d 864, 869 (7th Cir. 1983) (emphasis added). Here, although Defendant Stroud did not actually arrest Plaintiff (*see* Defs.' MSJ Ex. A, Attach. 3 (Warrant of Arrest) at 1 (Doc. No. 36-1)), he still "participated" in the arrest as he prepared the warrant application, which prompted Justice of the Peace Eaves to determine that probable cause existed and issue a warrant for Plaintiff's arrest. Defs.' MSJ Ex. A, Attach. 2 (Complaint/Warrant Application) at 1 (Doc. No. 36-1).

As to Defendant Stroud's second argument, "[i]t is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate, . . . the intermediary's decision breaks the chain of causation" and insulates the officers. *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo,* 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *see also Hand v. Gary,* 838 F.2d 1420, 1428 (5th Cir. 1988); *Murray v. Earle,* 405 F.3d 278, 291 (5th Cir. 2005). Officer-defendants can still be liable, however, if (1) they intentionally or recklessly made any materially false statements or omissions in the affidavit (*Franks* liability); or (2) the warrant is facially invalid (*Malley* liability).[4]

Plaintiff appears to argue that Defendant Stroud is liable under *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978), for making intentional or reckless omissions in the warrant application. *See, e.g., Kohler v. Englade,* 470 F. 3d 1104, 1113 (5th Cir. 2006) (discussing *Franks*); *see also*

---

[4] The Court notes that neither Plaintiff nor Defendants explicitly identify these two theories in their respective briefing. A review of Plaintiff's Complaint, which is the live Complaint in this case, however, confirms that Plaintiff's cause of action against Defendant Stroud is grounded on *Franks* and its progeny. (Doc. No. 1). Therefore, notwithstanding the Parties' lack of identification, the authorities cited herein establish that *Franks* and *Malley* are the correct starting point for the analysis of this claim.

*Michalik v. Hermann,* 422 F. 3d 252, 258 n.5 (5th Cir. 2005). To determine materiality, courts insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause. *Kohler,* 470 F. 3d at 113. Furthermore, to meet his burden under *Franks*, Plaintiff must make a "strong preliminary showing" on summary judgment that Defendant Stroud made an omission "with the intent to mislead the magistrate." *United States v. Tomblin,* 46 F. 3d 1369, 1377 (5th Cir. 1995). Negligent omissions will not undermine an affidavit. *United States v. Martin,* 615 F. 2d 318, 329 (5th Cir. 1980).

Here, although not entirely clear, Plaintiff appears to assert that Defendant Stroud intentionally or recklessly omitted the following facts from his warrant application: (1) no suspects were identified by the Center Police Department's initial review of the video footage, which occurred immediately after the theft, (2) "grainy images" from the video footage were published in the local paper, (3) the initial source that identified Plaintiff based his identification solely on the images published in the paper, (4) there were "key differences" between Plaintiff's dark green Pontiac Bonneville and the black Pontiac G-6 that was initially identified as the purported getaway car, (5) Defendant Stroud only identified Plaintiff as one of the suspects after he received tips from CIs that Plaintiff was the suspect in the published images, and (6) Justice of the Peace Eaves was not provided with "the video footage or other basis for evaluating whether Plaintiff could be reliably identified as a suspect based solely on the grainy images." Pl.'s Resp. to Defs.' MSJ at pgs. 15-16 (Doc. No. 37). Put simply, Plaintiff essentially demands that Defendant Stroud detail his entire investigation in the warrant application to Justice of the Peace Eaves. Case law, however, does not impose such a requirement. *See Wilson v. Russo,* 212 F. 3d 781, 787 (3d Cir. 2000) ("All storytelling involves an element of selectivity. We cannot demand

that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip . . . .").

More importantly, the insertion of these facts could only bolster a finding of probable cause. If Defendant Stroud would have included a complete summary of his investigation, Justice of the Peace Eaves would have learned that Defendant Stroud was unable to identify Plaintiff after his first review of the surveillance footage because he had not met Plaintiff at that time. Defs.' MSJ Ex. A, Attach. 1 (Investigation) at 16-17 (Doc. No. 36-1). After receiving various tips from CIs, who Defendant Stroud had used before (Pl.'s Resp. to Defs.' MSJ Ex. 2 (Oral Deposition of Stephen Stroud) at 11:9-11:11 (Doc. No. 37-2)), interviewing and meeting with Plaintiff himself, and reviewing the video footage again, Defendant Stroud identified Plaintiff as one of the suspects involved in the theft. Defs.' MSJ Ex. A, Attach. 1 (Investigation) at 17-18 (Doc. No. 36-1).

In light of the foregoing, this Court concludes that any omissions in Defendant Stroud's affidavit were not material as probable cause would have existed even if all of the matters raised by Plaintiff had been included in the affidavit. After all, not only did CIs identify Plaintiff as a suspect in the theft but Defendant Stroud also made a similar identification after speaking with Plaintiff and reviewing the video footage once again. Plaintiff has failed to establish his burden under *Franks*.

Because Plaintiff is unable to demonstrate an underlying Fourth Amendment violation by Defendant Stroud, this Court **GRANTS IN PART** Defendants' Motion for Summary Judgment on Plaintiff's claim against Defendant Stroud with respect to the 2013 Wal-Mart Arrest.[5]

> ### b) *Defendant City of Center's Liability Based on the 2013 Wal-Mart Arrest*

---

[5] Having found no constitutional violation, the Court finds it unnecessary to address any immunity defenses raised by Defendant Stroud.

Plaintiff asserts that the City of Center should be liable under § 1983 because it "acted with deliberate indifference with regard [to] [its] policy of permitting officers unlimited discretion to determine whether probable cause exists." Pl.'s Resp. to Defs.' MSJ at pgs. 18-19 (Doc. No. 37). Liability under § 1983 exists "only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001).

Because the Court finds no deprivation of constitutional rights with respect to the 2013 Wal-Mart Arrest, it logically follows that Plaintiff's policy claim against the City of Center based on this 2013 Wal-Mart Arrest likewise fails.[6] This Court **GRANTS IN PART** Defendants' Motion for Summary Judgment on Plaintiff's claims against the City of Center with respect to the 2013 Wal-Mart Arrest.

### c) *Defendant Chief of Police Albers's Liability Based on the 2013 Wal-Mart Arrest*

Moreover, in relation to this 2013 Wal-Mart Arrest, Plaintiff avers that Defendant Albers "breached [his] duty to provide [his] officers with adequate supervision." Pl.'s Compl. at ¶25 (Doc. No. 1). To succeed on a failure to supervise claim under Section 1983, Plaintiff must show that: (1) Defendant Albers failed to supervise or train Defendant Stroud; (2) a causal link exists between the failure to train or supervise and the violation of Plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F. 3d

---

[6] Even assuming a violation occurred with respect to the 2013 Wal-Mart Arrest, Plaintiff still fails to prove his claim against the City of Center. In fact, Plaintiff fails to even identify the specific policy, custom, or pattern that he is complaining of with respect to his 2013 Wal-Mart Arrest. *See* Pl.'s Resp. to Defs.' MSJ at pg. 19 (Doc. No. 37). Without anything more, Plaintiff's claim fails and summary judgment on this issue is appropriate. *Gast v. Singleton*, 402 F. Supp. 2d 794, 799 (S.D. Tex. 2005) (dismissing the plaintiff's § 1983 claims because, among other things, he failed to identify a policy or custom that was the moving force behind their alleged constitutional violations).

908, 911-12 (5th Cir. 1998). As noted above, Plaintiff failed to establish that Defendant Stroud violated any of his constitutional rights during this 2013 Wal-Mart Arrest. It is axiomatic that if no violation occurred, Defendant Albers cannot be liable for a failure to supervise claim. *Los Angeles v. Heller,* 106 S. Ct. 1571, 1573 (1986).

Thus, as with Plaintiff's prior claims, this Court **GRANTS IN PART** Defendants' Motion for Summary Judgment on Plaintiff's claim against Defendant Albers with respect to the 2013 Wal-Mart Arrest.

### 2. Plaintiff's Claims Related to the 2014 Greer Street Arrest

#### a) *Defendant Police Officer Knowlton's Liability Based on the 2014 Greer Street Arrest*

Plaintiff contends that his 2014 Greer Street Arrest was neither supported by probable cause nor an arrest warrant. As set forth above, government officials acting within their discretionary authority are immune from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000).

At its core, Plaintiff's unlawful arrest claim against Defendant Knowlton turns on Plaintiff's location at the time the search and arrest warrant of the Greer Street Residence was executed. Here, Plaintiff claims that he was arrested in June 2014 because he was standing near the Greer Street Residence. In particular, Plaintiff avers that he was **not** on the premises until Officer Knowlton and other officers (under Officer Knowlton's direction) forced him into the residence's yard. Pl.'s Resp. to Defs.' MSJ Ex. 5 (Oral Deposition of Jamichael Phillips) at 53:1-53:19, 72:8-72-18 (Doc. No. 37-5).

Meanwhile, Defendant Knowlton conveys a different story. He asserts that probable cause existed for Plaintiff's 2014 Greer Street Arrest because (1) narcotics had been sold from

the house on multiple occasions; (2) narcotics were recovered at the house during the search; (3) no one at the scene claimed the narcotics; (4) no adults were found inside the house, **and** (5) Plaintiff was sitting in the front porch when the officers arrived to execute the search and arrest warrant of the Greer Street Residence. Defs.' MSJ Ex. 4 (Incident Report) (Doc. No. 36-1).

As the Fifth Circuit opined in *Haverda,* if the resolution of qualified immunity turns on what a defendant actually did and if there are conflicting versions of his conduct, then the case is inappropriate for summary judgment. 723 F. 3d at 599. In this case, the Parties present conflicting accounts of where Plaintiff was located when the police arrived at the Greer Street Residence on June 25, 2014, rendering summary judgment improper. *See Stewart v. Guzman,* 555 F. App'x 425, 432 (5th Cir. 2014).

What is more, as Plaintiff correctly points out, the qualified immunity inquiry at the summary judgment stage requires this Court to "recount the version of events most favorable to [Plaintiff]." *Cole v. Carson,* 802 F. 3d 752, 758 (5th Cir. 2015). By doing so, the Court must assume for purposes of summary judgment that Plaintiff was standing in the street near the Greer Street Residence. This version of events is not enough to establish probable cause; instead, a reasonable officer would have conducted a more thorough investigation to determine whether Plaintiff had any connection to the drugs found at the scene. *Evett v. DETNTFF,* 330 F. 3d 681, 684 (5th Cir. 2003). Nor would a reasonable officer determine that Plaintiff, who was allegedly standing in the street until he was forced into the yard, was in "control of [the] premises" as provided in the search and arrest warrant. Defs.' MSJ Ex. 6 (Search and Arrest Warrant) (Doc. No. 36-1).

For these reasons, the Court concludes that a genuine dispute remains as to Plaintiff's location at the time Defendant Knowlton executed the search and arrest warrant.[7] Consequently, this Court **DENIES IN PART** Defendants' Motion for Summary Judgment on Plaintiff's claim of unlawful arrest against Defendant Knowlton for the 2014 Greer Street Arrest.

### b) *Defendant City of Center's Liability Based on the 2014 Greer Street Arrest*

Plaintiff asserts once again that the City of Center should be liable under § 1983 because it "acted with deliberate indifference with regard [to] [its] policy of permitting officers unlimited discretion to determine whether probable cause exists." Pl.'s Resp. to Defs.' MSJ at pgs. 18-19 (Doc. No. 37). Generally, municipalities – like the City of Center – are not liable for their employees' constitutional torts unless those employees acted pursuant to an official action or with approval. *Monnell v. NYC Dep't of Soc. Servs.,* 436 U.S. 658, 663 n. 7 (1978). As discussed in Section IV(B)(1)(b) herein, to succeed on a claim for municipal liability under § 1983, Plaintiff must show: (1) a policymaker, (2) an official policy or custom, and (3) a violation of a constitutional right whose "moving force" is the policy or custom. *Piotrowski,* 237 F. 3d at 578.

To begin with, determining whether probable cause exists for an arrest is a discretionary decision made by an individual officer on a case-by-case basis. Qualified immunity provides protection to government officials when they engage in such discretionary functions. *Pearson v.*

---

[7] Even assuming that Plaintiff was in the front porch at the time Defendants executed the search and arrest warrant, summary judgment may still be improper. Case law is clear that "probable cause for the arrest of individuals in a household based on the presence of contraband depends on there being some fact suggesting knowledge of the contraband above and beyond the individual's mere presence in the household." *See, e.g., Holmes v. Kucynda,* 321 F. 3d 1069, 1081 (11th Cir. 2003); *United States v. Anderson,* 981 F. 2d 1560, 1566 (10th Cir. 1992). Here, along with Plaintiff's purported presence, Defendant Knowlton claims that (1) narcotics had been sold from the residence on multiple occasions, (2) narcotics were recovered at the residence, (3) no one at the scene claimed ownership of the narcotics, and (4) no adults were found inside the residence. Defs.' MSJ Ex. 4 (Incident Report) (Doc. No. 36-1). At this time, the Court need not analyze whether these factors **in addition to** Plaintiff's alleged presence in the residence's porch is sufficient to establish probable cause.

*Callahan*, 555 U.S. 223, 231 (2009). Police officers are entitled to exercise their discretion when determining whether probable cause exists for an arrest. As such, this allegation cannot constitute an "official policy" of the City of Center.

Defendants have also moved for summary judgment on the basis that Plaintiff's claim against the City of Center with respect to the 2014 Greer Street Arrest is conclusory. That is, Plaintiff offered "no evidence that a city policy gave rise to his alleged constitutional violations." Defs.' MSJ at 23 (Doc. No. 36). Plaintiff further presented "no evidence of a pattern or practice of similar constitutional violations." Defs.' MSJ at 23 (Doc. No. 36). A review of Plaintiff's Response confirms that he did not factually detail the policy, custom, or practice at issue. Nor did Plaintiff describe the injury that was caused by the execution of this policy, custom, or practice. *See Spiller v. City of Texas City, Police Dep't.,* 130 F. 3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

At most, Plaintiff cites to Defendant Chief of Police Albers's testimony that he was aware of arrests based on an individual's presence at a home or residence that was being searched for drugs. Pl.'s Resp. to Defs.' MSJ Ex. 4 (Oral Deposition of Jim Albers) at 54:8-54:22 (Doc. No. 37-4). This testimony is insufficient to establish the existence of a custom, pattern, or practice of similar violations. First, proof of custom or practice requires more than a showing of isolated acts. *Burge v. St. Tammany Parish,* 336 F. 3d 363, 370 (5th Cir. 2003). Second, this testimony is devoid of any specific facts of each arrest.[8] Pl.'s Resp. to Defs.' MSJ Ex. 4 (Oral Deposition of Jim Albers) at 54:8-55:15 (Doc. No. 37-4). In fact, Defendant Albers explicitly clarifies that he **cannot** provide any names, dates, and times for these purported arrests. Pl.'s Resp. to Defs.' MSJ Ex. 4 (Oral Deposition of Jim Albers) at 54:12-54:13 (Doc.

---

[8] Notably, this testimony does not make clear that these "arrests" were effectuated without probable cause.

No. 37-4).  To that end, Defendant Albers's testimony falls short of amounting to the actual existence of a custom, pattern, or practice of similar violations.  *See Moore v. Bowie Cnty, Tex.,* No. 5:11-CV-110, 2012 WL 4355031, at *15 (E.D. Tex. July 31, 2012).

Because Plaintiff has not presented an "official policy or custom," his claim against City of Center with respect to his 2014 Greer Street Arrest fails as a matter of law.  This Court **GRANTS IN PART** Defendants' Motion for Summary Judgment on Plaintiff's claim against the City of Center as to the 2014 Greer Street Arrest.

### c) *Defendant Chief of Police Albers's Liability Surrounding the 2014 Greer Street Arrest*

Finally, in relation to the 2014 Greer Street Arrest, Plaintiff appears to re-urge his allegation that Defendant Albers "breached [his] duty to provide [his] officers with adequate supervision."  Pl.'s Compl. at ¶25 (Doc. No. 1).  Just as in his failure to supervise claim with respect to the 2013 Wal-Mart Arrest, Plaintiff must show that: (1) Defendant Albers failed to supervise or train Defendant Knowlton; (2) a causal link exists between the failure to train or supervise and the violation of Plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.  *Smith,* 158 F. 3d at 911-12.  Deliberate indifference requires "a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights.'" *Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir.2003) (quoting *Thompson v. Upshur Cnty,* 245 F.3d 447, 459 (5th Cir.2001)).  Rather, Plaintiff must demonstrate "at least a pattern of similar violations" arising from training or supervising "that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Id.* (quoting *Thompson,* 245 F.3d at 459).  A limited exception for single-incident liability exists only "where the facts giving rise to the violation are such that it should have been apparent to the

policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Id.* at 372.

In this case, Plaintiff failed to proffer summary judgment evidence to satisfy any of the elements necessary to prove his failure to supervise claim as to the 2014 Greer Street Arrest. First, Plaintiff provided **no** evidence that Defendant Albers failed to supervise Defendant Knowlton. Nowhere in Plaintiff's Response to Defendants' Motion for Summary Judgment does Plaintiff even raise such an assertion. *See gen.* Pl.'s Resp. to Defs.' MSJ at 19 (Doc. No. 37). Second, Plaintiff has offered no support to show that Defendant Albers's alleged failure to supervise caused a violation of his rights. Once again, Plaintiff's Response lacks any discussion of this element. *See gen.* Pl.'s Resp. to Defs.' MSJ at 19 (Doc. No. 37). Above all, Plaintiff does not argue that Defendant Albers's failure to supervise amounts to "deliberate indifference." With these issues in mind, the Court finds that summary judgment is proper with respect to Plaintiff's claim against Defendant Albers as to the 2014 Greer Street Arrest. *See, e.g., Jones v. Pillo,* 189 F. App'x 304, 305-6 (5th Cir. 2006) (affirming the district court's decision to grant summary judgment on the plaintiff's failure to adequately train and supervise claim because he did not present any evidence to support this claim); *Mitchell v. City of Jackson, Miss.,* 481 F. Supp. 2d 586, 591-2 (S.D. Miss. 2006) (noting that officer-defendants were entitled to summary judgment because the plaintiffs offered no proof of any failure to train or supervise beyond their conclusory allegations).

Accordingly, this Court **GRANTS IN PART** Defendants' Motion for Summary Judgment on this issue and dismisses Plaintiff's claim against Defendant Albers with respect to the 2014 Greer Street Arrest.

## V.    CONCLUSION

In sum, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 36) is **GRANTED IN PART** as to:

1.      Plaintiff's claim against Defendant Police Officer Stroud, in his individual capacity, with respect to the 2013 Wal-Mart Arrest;

2.      Plaintiff's claim against the City of Center with respect to the 2013 Wal-Mart Arrest;

3.      Plaintiff's claim against Defendant Chief of Police Albers, in his individual capacity, for failure to supervise or train with respect to the 2013 Wal-Mart Arrest;

4.      Plaintiff's claim against the City of Center with respect to the 2014 Greer Street Arrest; and

5.      Plaintiff's claim against Defendant Chief of Police Albers, in his individual capacity, for failure to supervise or train with respect to the 2014 Greer Street Arrest.

It is further **ORDERED** that Defendants' Motion for Summary Judgment is **DENIED IN PART** due to factual[9] disputes that must be resolved to make the qualified immunity determination as to Plaintiff's claim against Defendant Police Officer Knowlton, in his individual capacity, with respect to the 2014 Greer Street Arrest.[10]

**It is SO ORDERED.**

**SIGNED this 8th day of January, 2016.**

_Michael H. Schneider_
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

---

[9] A court of appeals lacks jurisdiction on interlocutory appeal "[i]f a factual dispute must be resolved to make the qualified immunity determination." *Manis v. Lawson,* 585 F. 3d 839, 843 (5th Cir. 2009).

[10] Plaintiff's claim against Defendant Knowlton, in his individual capacity, as to the 2014 Greer Street Arrest is the sole remaining claim in this lawsuit.